**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| WESCO INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )　　　　No. |
| | ) |
| KISLING, NESTICO & REDICK, LLC, | ) |
| ALBERTO NESTICO, ROBERT REDICK | ) |
| MEMBER WILLIAMS, NAOMI WRIGHT, | ) |
| MATTHEW JOHNSON AND THERA REID | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES the Plaintiff, Wesco Insurance Company, ("Wesco"), by and through its undersigned counsel, and for its Complaint for Declaratory Judgment against  Kisling, Nestico & Redick, LLC ("KNR"), Alberto Nestico ("Nestico"), Robert Redick ("Redick"),  Member Williams ("Williams"), Naomi Wright ("Wright"), Matthew Johnson ("Johnson") and  Thera Reid ("Reid"),  states as follows:

**<u>General Allegations</u>**

1.      Wesco is, and at all times relevant hereto was, an insurance company organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York.

2.      Defendant herein, KNR, is an Ohio Domestic Limited Liability Company with its principal place of business in Summit County, Ohio.  All members of KNR are citizens of Ohio.

3.      Defendants herein, Nestico and Redick, are attorneys licensed to practice law in the State of Ohio and individual citizens of the State of Ohio.

1

4.      Defendants herein, Williams, Wright, Johnson and Reid, are citizens of the State of Ohio.

5.      This action is brought pursuant to the provisions of 28 U.S.C. § 2201, in that a controversy exists between the parties, to be decided by the Court as a declaratory judgment.

6.      The events giving rise to this lawsuit occurred within Summit County in Ohio.  As such, venue is proper in this Court, pursuant to 28 U.S.C. § 1391.

7.      The parties are of diverse citizenship and jurisdiction is appropriate in this Court, pursuant to 28 U.S.C. § 1332.

8.      The amount in controversy exceeds $75,000, exclusive of interest and costs.  The underlying lawsuit against Wesco's insured is a purported class action that allegedly seeks relief for four classes of similarly situated individuals and  the underlying plaintiffs allege that each class of plaintiffs is compromised at more than 1,000 persons.    The limit of liability under the Wesco Policy is $1,000,000 per claim.

## THE WESCO POLICY

9.      On or about February 1, 2016, Wesco issued a policy of Lawyers Professional Liability insurance to KNR[1], as the **Named Insured** under Policy No. WPP1096836 01 (hereinafter the "Wesco Policy").  A true and correct copy of the Wesco Policy is attached hereto as Exhibit A.

10.     The Insuring Agreement Wesco Policy states, in relevant part, as follows:

I.      **INSURING AGREEMENT**

        A.  Coverage

---

[1] The Policy was issued to Kisling Legal Group, LLC  dba Kisling, Nestico & Redick.  According to the records on file with the Ohio Secretary of State, on or about May 5, 2016, the firm officially changed its name to Kisling, Nestico & Redick LLC.  For ease of reference, the complaint will use the current name.

2

The **Company** will pay on behalf of the **Insured** sums in excess of the deductible that the **Insured** shall become legally liable to pay as **damages** because of a **claim** that is first made against the **Insured** and reported to the **Company** during the **policy period** or any Extended Reporting Period arising out of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that:

1. prior to the inception date of the **policy period**, the **Insured** did not give notice under any other insurance policy of such **claim** or **related claim** or such act or omission or **related act or omission**; and

2. prior to the inception date of this Policy, or if coverage has been continuously renewed, prior to the inception date of the first policy issued by the **Company**, no **Insured** knew or could reasonably have foreseen that any such act or omission, or **related act or omission**, might be the basis of a **claim**.

B. Defense

The **Company** shall have the right and duty to defend, subject to and as part of the Limits of Liability, any **claim** against the **Insured** seeking **damages** which are payable under the terms of this Policy even if any of the allegations of the **claim** are groundless, false or fraudulent. The **Company** shall have the right to appoint counsel and to make such investigation and defense of a **claim** as it deems appropriate. If a **claim** shall be subject to arbitration or mediation, the **Company** shall be entitled to exercise all of the **Insured's** rights in the choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

11. The Wesco Policy defines **Claim** as follows:

B. "**Claim**" means a written or verbal demand received by the **Insured** for money or services arising out of an act or omission, including **personal injury**, in rendering or failing to render **legal services**. A demand shall include the service or suit or the institution of an arbitration proceeding against the **Insured**.

12. The Wesco Policy defines **Damages** as follows:

E. "**Damages**" means judgments, awards and settlement if negotiated with the assistance and approval of the **Company**. **Damages** do not include:

3

1. Legal fees, costs and expenses paid to or incurred or charged by the **Insured**, whether or not claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;

2. Any conversion, misappropriation, improper comingling or negligent supervision by any person of client or trust account funds or property or funds of any other person held or controlled by an **Insured** in any capacity or under any authority, including any loss or reduction in value of such funds or property;

....

4. punitive or exemplary amounts in any multiplied portion of multiplied awards;

5. any form of non-monetary relief;

....

7. matters deemed uninsurable by operation of law.

13. The Wesco Policy defines **Insured** to include:

    G. **"Insured"** means the **Named insured, predecessor firm** and the persons or entities described below:

       1. Any lawyer, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership who is or becomes a partner, officer, director, stockholder-employee, associate, manager, member or salaried employee of the **Named Insured** during the **policy period** shown in the Declarations;

14. The Wesco Policy defines **Legal Services** to include:

    H. "**Legal services**" mean:

       1. those services performed by an **Insured** for others as a lawyer…but only if such services are performed for a fee that inures to the benefit of the **Named Insured**…

15. The Wesco Policy defines **Policy Period** as follows:

    K. "**Policy period**" means the period of time between the inception date and time shown in the Declarations and the date and time of termination, expiration or cancellation of this Policy.

4

16.    The Wesco Policy defines **Related act or omission"** as follows:

M. "**Related act or omission**" means all acts or omissions in the rendering of **legal services** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

### THE UNDERLYING ACTION

17.    In 2016, certain individuals, brought an action against, KNR and others  in the Court of Common Pleas Summit County Ohio.  The resulting lawsuit, hereinafter the "Underlying Action," was assigned Case No. 2016-09-3928 by the Honorable Clerk of the Court for the Court of Common Pleas for Summit  County, Ohio.

18.    On or about October 18, 2017, a "Third Amended Class-Action Complaint with Jury Demand," hereinafter the Underlying Complaint, was filed in the Underlying Action.   The Underlying Action names Williams, Wright, Johnson and Reid (hereinafter the "Underlying Plaintiffs") as Plaintiffs and putative class representatives.  The Underlying Complaint names KNR, Nestico and Redick (hereinafter the "KNR Defendants") as Defendants.  A copy of the Underlying Complaint is attached as Exhibit B.

19.    The Underlying Complaint alleges, in paragraph 1, that the KNR Defendants have engaged in "unlawful, deceptive, fraudulent and predatory business practices…."

20.    The Underlying Complaint groups its alleged facts under eight headings to support its causes of action.  The eight group headings state that:

A.  KNR unlawfully solicits clients through a network of chiropractors with whom it maintains unlawful quid pro quo referral relationships;

B.  KNR routinely directs its clients to treat with certain health care providers depending on Kisling, Nestico & Redick 's business interests and without regard for its clients' interests, in violation of Ohio law;

C.  KNR pressures its clients into unwanted healthcare to serve the interests of the providers with whom it maintains quid pro quo relationships;

D.  KNR serves the interests of its preferred health care providers at the expense of its clients by guaranteeing the clients' payments to the providers, and failing to disclose the conflict of interest to its clients;

E.  KNR charges fraudulent "narrative fees" to its clients as part of a scheme to reward chiropractors to solicit and refer clients to KNR;

F.   KNR fraudulently charges clients "investigation fees" for investigations that never take place;

G.  KNR 's internal documentation supports the fraudulent nature of the "investigation fees";

H.  KNR directed its clients to take out high-interest loans with Liberty Capital Funding, a company in which defendants maintained a financial interest;  [and],

I.  Defendants Nestico and Redick are personally responsible for KNR's unlawful acts.

21.     The Underlying Complaint alleges in that these business practices by KNR are so widespread that there are four potential classes of plaintiffs and that each class consists of thousands of people.

6

22.     The Underlying Complaint alleges that Class A consists of all current and former clients of KNR who were charged an investigative or investigation fee.  The common legal and factual issues for this class are alleged to be:

      i.     the so-called investigators never performed any investigations;

      ii.    the majority of cases, the so-called investigators never performed any task in connection with the client;

      iii.   the so-called investigators never performed any services that were properly chargeable to clients as a separate case expense as supposed to an overhead expense;

      iv.   Defendants never properly disclosed what the investigation fee was for;

      v.    Defendants never obtained their clients' consent for the investigation fee;

      vi.   The KNR Defendants intended to mislead KNR's clients into paying the investigation fee;

      vii.   KNR breached its fee agreement with its clients in assessing and collecting the investigation fee;

     viii.   The KNR Defendants' undisclosed self-dealing including the investigation fee renders the fee void as a matter of law; and,

      ix.   The KNR Defendants breached their fiduciary duty to their clients in assessing and collecting the investigation fee, causing injury to the Class in the amount of the investigation fee.

23.     The Underlying Complaint alleges that Class B consists of all current and former clients of KNR who were referred to KNR by Akron Square Chiropractic or referred by KNR to Akron Square Chiropractic who terminated KNR and had a lien asserted by KNR on their lawsuit

proceeds. Class D allegedly consists of all current and former KNR clients who had a narrative fee deducted by KNR to be paid to a chiropractor. The common legal and factual questions for both Class B and Class D are alleged to be that:

i. The KNR Defendants maintained arrangements with chiropractors to split certain marketing costs to target clients for both KNR and the chiropractors;

ii. The KNR Defendants maintained arrangements with chiropractors by which the defense would use the chiropractors' representatives to circumvent the Ohio Rules of Professional Conduct concerning the solicitation of clients;

iii. The KNR Defendants, as a matter of firm policy, directed KNR clients to treat with certain chiropractors regardless of the clients' preference or needs;

iv. The KNR Defendants, as a matter of firm policy, directed KNR clients to treat with certain chiropractors based on a quid pro quo referral relationship with the chiropractors;

v. The KNR Defendants, as a matter of KNR policy, deducted a "narrative fee" from clients elements as a kickback to reward certain chiropractors;

vi. The KNR Defendants received kickbacks in the form of referrals and other benefits in exchange for referring cases to the chiropractors;

vii. The KNR Defendants, as a matter of KNR policy, failed to disclose to their clients that they maintained a quid pro quo relationship with the chiropractors;

viii. The KNR Defendants knew that advising their clients to treat with the chiropractors would be detrimental to their clients' cases to the due to various fraud lawsuits by major insurance carriers against the owner of the chiropractors' clinics;

ix. The KNR Defendants had no legitimate justification for directing their clients to treat with these chiropractors;

x. The KNR Defendants breached their fiduciary duty to Class B and Class D members by this conduct;

xi. The KNR Defendants undisclosed self-dealing renders all related agreements with Class B and Class D members, including fees deducted from and liens asserted by the defendants on the proceeds of Class B and Class B members' lawsuits, void as a matter of law; and,

xii. Class B and Class D members are entitled to rescission of all agreements with KNR and rescission of all liens asserted by KNR and disgorgement of all fees collected under such liens and under such agreements.

24. The Underlying Complaint alleges that Class C consists of all current and former KNR clients who paid interest or fees on a loan taken through Liberty Capital Funding LLC. The common issues of law and fact for Class C are alleged to be that:

i. The KNR Defendants, as a matter of KNR policy, recommended to their clients that they obtain loans with Liberty Capital

ii. The KNR Defendants received kickback payments for every loan transaction at Liberty Capital completed with KNR clients;

iii. The KNR Defendants failed to advise their clients of their financial interests in the Liberty Capital loans;

iv. The KNR Defendants failed to consider whether the loan was in their clients' best interest, and failed to encourage their clients to consider other possible source of funds that carry lower interest rates and fees;

9

v.     The KNR Defendants' conduct in this regard constituted a breach of fiduciary duty under Ohio law injured the class of KNR clients in the same manner;

vi.    The KNR Defendants' undisclosed self-dealing renders all related agreements with the Class C members void is matter of law; and,

vii.   Class C members are entitled to damages as a result of these breaches including the amount of fees and interest paid on all Liberty Capital loans and disgorgement such fees and interest retained by Defendants.

25.    The Underlying Complaint alleges that the above facts and class allegations support 10 cause of action.  The 10 cause of action are for:

Claim 1.    Fraud – KNR's charging the investigator fees for Class A;

Claim 2.    Breach of Contract – KNR's charging the investigator fees for Class A;

Claim 3.    Breach of Fiduciary Duty – KNR's charging the investigator fees for Class A;

Claim 4.    Unjust Enrichment – KNR's charging the investigator fees for Class A;

Claim 5.    Breach of Fiduciary Duty – KNR's unlawful solicitation and undisclosed self-dealing with chiropractors for Class B;

Claim 6.    Unjust Enrichment – KNR's unlawful solicitation and undisclosed self-dealing with chiropractors for Class B;

Claim 7.    Breach of Fiduciary Duty – KNR's undisclosed self-dealing with Liberty Capital Funding LLC for Class C;

Claim 8.    Unjust Enrichment – KNR's undisclosed self-dealing with Liberty Capital Funding LLC for Class C;

Claim 9.    Breach of Fiduciary Duty – KNR's undisclosed self-dealing with chiropractors – narrative fee for Class D; and,

Claim 10.    Unjust Enrichment – KNR's undisclosed self-dealing with chiropractors – narrative fee for Class D.

26.    The Complaint in the Underlying Action seeks the following relief:

(1)    An order permitting the litigation to proceed as a class action;

(2)    An order to promptly notify all class members that the litigation is pending;

(3)    Declaratory and injunctive relief against Defendants' unlawful conduct including a declaratory judgment that the conduct at issue is an unfair or deceptive practice in violation of R.C. 1345.02 and a declaratory judgment that under Civ. R. 23 (B) (2) it all liens asserted by the Defendants against Class B members lawsuit proceeds are void as a matter of law due to the Defendants' fraudulent undisclosed self-dealing;

(4)    Compensatory and recessionary damages for plaintiffs Williams, Wright, Johnson and the classes represented, in excess of $25,000;

(5)    Punitive damages, attorneys' fees and costs, pre-judgment interest; and,

(6)    Such other relief in law or equity that the court deems just and proper.

27.    By letter dated July 19, 2016, Wesco, through its authorized representative, agreed to provide a defense to the KNR Defendants for the Underlying Action subject to a full and complete reservation of Wesco's rights.

## COUNT I – DECLARATORY JUDGMENT
## DEFINITION OF LEGAL SERVICES

28.     Wesco re-states and re-alleges each and every allegation contained within paragraphs 1 through 27 above, as if each and every such allegation were set forth in full herein.

29.     The Insuring Agreement of the Wesco policy states that Wesco is only obligated to "pay on behalf of the **Insured** sums in excess of the deductible that the **Insured** shall become legally liable to pay as **damages** because of a **claim** that is first made against the **Insured** and reported to the **Company** during the **policy period** or any Extended Reporting Period arising out of an act or omission in the performance of **legal services** by the **Insured**…."

30.     The Underlying Complaint alleges that the Underlying Plaintiffs and the members of each of the four putative classes have suffered injuries because of: KNR's policies and procedures; KNR's business practices, KNR's allegedly improper relationships with  certain chiropractors; and KNR's allegedly improper relationship with Liberty Capital Funding LLC.

31.     The Underlying Complaint does not allege that any of the Underlying Plaintiffs and/or members of the four putative classes suffered any injuries arising out of any act or omission in the performance of services for others by an **Insured** as a lawyer.  The acts or omissions complained of in the Underlying Complaint that could potentially give rise to liability did not require the specialized knowledge, training or knowledge of a lawyer.

32.     Therefore, the Underlying Complaint does not make a **claim** for **damages** arising out of an act or omission in the performance of **legal services** as that term is defined under the Wesco Policy and, thus, the **claim** asserted within the Underlying Action does not fall within the grant of coverage set forth in the Insuring Agreement of the Wesco Policy.

12

33.     For this reason, Wesco is under no duty to defend or indemnify any **Insured** in connection with the Underlying Action.

## COUNT II – DECLARATORY JUDGMENT
## NO DUTY TO DEFEND –DAMAGES

34.     Wesco re-states and re-alleges each and every allegation contained within paragraphs 1 through 33 above, as if each and every such allegation were set forth in full herein.

35.     The Wesco Policy specifically defines the term **damages** not to include "[l]egal fees, costs and expenses paid to or incurred or charged by the **Insured**, whether or not claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing."

36.     The Wesco Policy also specifically defines the term **damages** not to include **"[**a]ny conversion, misappropriation, improper commingling or negligent supervision of client or trust account funds or property held or controlled by any **Insured** in any capacity."

37.     The Wesco Policy also specifically defines the term **damages** not to include punitive or exemplary amounts, and any form of nonmonetary relief.

38.     The Complaint in the Underlying Action seeks three forms of nonmonetary relief, as well as an award of punitive damages.  Such relief does not fall within the Insuring Agreement of the Wesco Policy because such relief does not fall within the Wesco Policy's definition of **damages**.

39.     To the extent that the Complaint in the Underlying Action could be construed to seek a judgment or award of monetary relief other than punitive damages, such an award would not fall within the Insuring Agreement of the Wesco Policy because such monetary relief would

13

constitute injuries that are a consequence of  legal fees, costs and expenses paid to or incurred or charged by the **Insured** and, thus, would not fall within the Wesco Policy's definition of **damages**.

40.     To the extent that the Complaint in the Underlying Action could be construed to seek a judgment or award of monetary relief other than punitive damages, such an award would not fall within the Insuring Agreement of the Wesco Policy because such relief would constitute recompense for conversion, misappropriation, improper comingling or negligent supervision by any person of client or trust account funds or property of any other person held or controlled by an **Insured** and, thus, would not fall within the Wesco Policy's definition of **damages**.

41.     Therefore, the Underlying Complaint does not seek **damages** as that term is defined by the Wesco Policy and thus, the **claim** that is the Underlying Complaint does not fall within the grant of coverage set forth in the Insuring Agreement of the Wesco Policy.

42.     For these additional reasons, Wesco is under no duty to defend or indemnify any **Insured** in connection with the Underlying Action.

WHEREFORE, the Plaintiff, Wesco Insurance Company, prays this Honorable Court to enter an Order:

A.  Adjudicating and declaring the rights of the Parties hereto under the Wesco Policy in connection with the Underlying Action;

B.  Finding and declaring that Wesco is under no duty or obligation to defend the KNR Defendants in connection with the Underlying Action;

C.  Finding and declaring that Wesco is under no duty or obligation to indemnify the KNR Defendants in connection with any judgment that may be entered in the Underlying Action;

14

D.  Finding and declaring that Wesco is under no duty or obligation to pay to the Underlying Plaintiffs and/or to any certified class any judgment entered or settlement reached in connection with Underlying Action; and,

E.  Granting Wesco any and all further relief that this Honorable Court may deem equitable and just.

Respectfully submitted,

/s/ Michelle J. Sheehan
Michelle J. Sheehan (0062548)
Brian D. Sullivan (0063536)
Reminger Co., L.P.A.
101 West Prospect Ave., Suite 1400
Cleveland, OH 44115
(216) 687-1311; Fax: (216) 687-1841
msheehan@reminger.com

*Attorneys for Plaintiff*
*Wesco Insurance Company*

15